## PEOPLE v RODGERS

Docket No. 223130. Submitted June 13, 2001, at Detroit. Decided December 14, 2001, at 9:15 A.M. Leave to appeal sought.

Eric K. Rodgers was convicted by a jury in the Oakland Circuit Court, Steven N. Andrews, J., of three counts of armed robbery, one count of felon in possession of a firearm, and four counts of possession of a firearm during the commission of a felony. The court sentenced the defendant as a third-offense habitual offender to imprisonment for life for each armed robbery count, five to ten years for the felon in possession of a firearm count, and two years for each felony-firearm count, with the sentences for armed robbery and felon in possession of a firearm to run concurrently and with the sentences for felony-firearm to run concurrently with each other but consecutively to the sentences for armed robbery and felon in possession of a firearm. The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence to support the defendant's conviction of three counts, not just one count, of armed robbery for taking money from a cash drawer at a muffler shop while he was armed with a shotgun that he brandished before the manager of the shop and two of its employees. The elements of armed robbery consist of an assault and a felonious taking of property from the victim's presence or person while the defendant is armed with a dangerous weapon or any article used or fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon. The prosecution need not show that the victim actually owned the property taken, but only that the property was taken in the victim's presence and that the victim's right to possess the property was superior to the defendant's right to possess it. In this case, while the shop employees' right to possess the money in the cash drawer was inferior to the shop manager's right of possession, the employees' right of possession was superior to that of the defendant. Accordingly, the defendant was properly convicted of three counts of armed robbery for taking money in the presence of three people whom the defendant assaulted while armed with a dangerous weapon.

2. The defendant's trial counsel did not render ineffective assistance by failing to move for a mistrial when the court clerk informed prospective jurors of the defendant's prior conviction of armed robbery despite the parties' stipulation that, for purposes of the charge of felon in possession of a firearm, the jury would be informed only that the defendant had a prior felony conviction. Manifest injustice did not result from the mention of the defendant's prior armed robbery conviction, given that the trial court instructed the jury to separately consider each of the charges against the defendant.

3. The defendant's trial counsel did not render ineffective assistance by allowing the defendant to testify during direct examination that he previously had been convicted twice of armed robbery and once of breaking and entering a motor vehicle. The defendant volunteered that specific information in response to a general question by counsel whether the defendant had been in trouble before. The defendant does not suggest that counsel advised him to answer in that manner, and the trial court instructed the jury that evidence of the defendant's prior convictions could be used only to assess the defendant's credibility.

4. The defendant's trial counsel did not render ineffective assistance when cross-examining the defendant's ex-girlfriend regarding why she was angry with the defendant. On direct examination by the prosecution, the girlfriend testified that she had ended her relationship with the defendant because he was robbing people. Instead of objecting or requesting a special instruction regarding that testimony, the defendant's counsel, on recross-examination, elicited from the girlfriend that the defendant robbed "dope dealers" and that she was angry with the defendant because he did not share robbery proceeds with her. The defendant's counsel engaged in sound trial strategy in mitigating the damage caused by the girlfriend's testimony.

5. The trial court did not abuse its discretion in imposing life sentences for the armed robbery convictions. The defendant is a third-offense habitual offender, the sentences are within the statutory limits, and the defendant's inability to conform his conduct to the requirements of the law is evident from his extensive criminal history, poor record in prison, and hasty and repeated resort to armed robbery after release from prison.

Affirmed.

1. ROBBERY — ARMED ROBBERY.

The elements of armed robbery consist of an assault and a felonious taking of property from the victim's presence or person while the defendant is armed with a dangerous weapon or any article used or

fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon (MCL 750.529).

2. ROBBERY — ARMED ROBBERY — VICTIMS' RIGHT OF POSSESSION.

A prosecutor in an armed robbery case need not show that the victim actually owned the property taken, but only that the property was taken in the victim's presence and that the victim's right to possess the property was superior to the defendant's right to possess it (MCL 750.529).

3. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking to establish ineffective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; the defendant must further demonstrate a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and the attendant proceedings were fundamentally unfair or unreliable.

4. SENTENCES — HABITUAL OFFENDERS — ABUSE OF DISCRETION.

A trial court does not abuse its discretion in sentencing an habitual offender where the sentence is within the statutory limits and the offender's underlying felony, in the context of previous felonies, demonstrates the defendant's inability to conform the defendant's conduct to the laws of society.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*), for the defendant on appeal.

Before: SMOLENSKI, P.J., and McDONALD and JANSEN, JJ.

SMOLENSKI, P.J. Defendant appeals as of right from his jury convictions and sentences on three counts of armed robbery, MCL 750.529, one count of felon in possession of a firearm, MCL 750.224f, and four counts of possessing a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced

defendant, as a third-offense habitual offender, MCL 769.11, to concurrent terms of life imprisonment for each count of armed robbery, along with a term of five to ten years' imprisonment for the felon in possession of a firearm charge. In addition, the trial court sentenced defendant to the mandatory terms of two years' imprisonment for each of the felony-firearm convictions, those sentences to run concurrently with each other but consecutively to the sentences for armed robbery and felon in possession. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the robbery of a Speedy Muffler shop in Pontiac on November 25, 1998. At the time of the robbery, three employees were present in the shop: Steven VanAssche, Mark Babala, and Jake Fournier. VanAssche, the store manager, was standing by the cash drawer in the front office. Babala, a mechanic and assistant manager, was seated in the front office, reading a magazine. Fournier, a mechanic, was working on a vehicle in the back room.

VanAssche and Babala testified that defendant entered the front office, brandishing a pistol-gripped, sawed-off shotgun. Defendant announced a "stick-up" and racked the shotgun, causing a live round to fall to the floor. When defendant demanded cash, VanAssche unlocked the cash drawer and told defendant to take whatever he wanted. As defendant began emptying the cash drawer, he ordered VanAssche and Babala into the back room. The two employees complied, and VanAssche informed Fournier that an armed robbery was in progress. Fournier stepped away from his

vehicle and observed defendant emptying the cash drawer.

After warning Fournier, VanAssche headed for a back door, seeking an escape route. Defendant entered the back room and ordered Babala and Fournier to their knees, pointing the shotgun at Babala's head. Noticing VanAssche near the back door, defendant ordered him to return, threatening to kill Babala and Fournier if he failed to comply. Defendant then ordered all three men to empty their pockets. VanAssche testified that he surrendered approximately $250 to defendant. Babala and Fournier both testified that their pockets were empty and that defendant did not take any money or property from their persons.

### II. ARMED ROBBERY

Defendant first argues that the prosecutor failed to present sufficient evidence to support defendant's conviction on three separate counts of armed robbery. Specifically, defendant argues that he took money only from VanAssche, and did not take any money or property from either Babala or Fournier. Therefore, defendant contends that the elements of armed robbery could have been satisfied with respect to VanAssche only. The prosecutor responds that defendant was properly convicted of robbing Babala and Fournier because he took money from the company cash box while they were present.

When reviewing the sufficiency of the evidence in a criminal case, we must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that

the essential elements of the crime were proved beyond a reasonable doubt. *People v Jaffray,* 445 Mich 287, 296; 519 NW2d 108 (1994); *People v Fetterley,* 229 Mich App 511, 515; 583 NW2d 199 (1998). Viewed in that light, we conclude that the evidence was sufficient to support defendant's convictions of robbing Babala and Fournier while armed.

The armed robbery statute provides, in pertinent part:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony . . . . [MCL 750.529.]

Thus, the elements of armed robbery are "(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v Turner,* 213 Mich App 558, 569; 540 NW2d 728 (1995). Further, in an armed robbery case, the prosecutor need not show that the victim actually owned the property taken. Rather, the prosecutor need only show that the property was taken in the victim's "presence" and that the victim's right to possess the property was superior to the defendant's right to possess it. *People v Jones,* 71 Mich App 270, 272; 246 NW2d 381 (1976); *People v Beebe,* 70 Mich App 154, 159; 245 NW2d 547 (1976).

Defendant's argument on appeal centers on Babala's and Fournier's rights to possess the cash contained in the company cash box. Defendant does

not argue that he possessed superior rights to the company's cash, when compared to these two employees. However, defendant argues that VanAssche, as store manager, possessed superior rights to the company's cash, when compared to Babala and Fournier. Therefore, defendant argues that he robbed only VanAssche, and did not rob either Babala or Fournier.

Defendant relies on *People v McMichael*, unpublished opinion per curiam of the Court of Appeals, issued October 21, 1993 (Docket No. 139297),[1] to support his argument. In *McMichael*, the defendant and another man decided to rob the home of Ralph and Angela Schultz. *Id.*, slip op at 1. When the two men forced their way inside, the two adults were home with their children, who were eleven and ten years old respectively. *Id.* The two robbers, both of whom were armed, ransacked the premises and took some money and jewelry. *Id.* A jury convicted the defendant of four counts of armed robbery, among other offenses. *Id.* On appeal, this Court reversed the defendant's armed robbery convictions relating to the two children:

> The intended unit of prosecution under the [armed robbery] statute is the person assaulted and robbed. The victim need not be the actual owner of the stolen property; mere custody or right of control by the victim is sufficient to sup-

---

[1] Ordinarily, we would not reference an unpublished opinion, which carries no precedential value under the doctrine of stare decisis. MCR 7.215(C)(1). However, another panel of this Court did reference *McMichael* in a published opinion, impliedly adopting *McMichael's* reasoning. *People v Courts*, 205 Mich App 326, 329; 517 NW2d 785 (1994). Given this situation, we believe it both appropriate and necessary to address the *McMichael* analysis regarding the requirements for armed robbery convictions.

port a charge of larceny or robbery. In this case, there was no evidence that any of the property taken by defendant [or his co-defendant] actually belonged to [the children]. Further, there was no evidence from which it could be inferred that the two Schultz children had any joint rights to the stolen jewelry or money. As noted by the prosecution, had this been a case where the children were home alone when robbed, they could be found to be robbery victims since their ownership rights to the property within the house would be superior to defendant's. In this case, however, as between the children and their parents, the only reasonable inference from the record is that the parents had superior rights to the property. Because the children were merely present when their parents were robbed and were not themselves deprived of property within their custody or control, there was insufficient evidence to sustain the armed robbery convictions and related felony-firearm convictions related [sic] to them. Accordingly, we vacate those convictions. [*Id.*, slip op at 1-2 (citations omitted).]

In *People v Courts*, 205 Mich App 326, 329; 517 NW2d 785 (1994), this Court considered the appeal of McMichael's codefendant, who was also convicted of four counts of armed robbery, arising from the same incident. In that case, the defendant argued on appeal that two of his armed robbery convictions and two of his felony-firearm convictions should be vacated, "because there is no evidence that any property was taken from the Schultzes' two children." *Id.* The prosecutor concurred with the defendant's argument. *Id.* Citing *McMichael*, and without further explanation, this Court vacated two of the defendant's armed robbery and felony-firearm convictions. *Id.*

In the present case, defendant contends that the *McMichael* analysis involving parents and children also applies to situations involving supervisory and

subordinate employees.[2] Defendant points to the fact that only VanAssche, the store manager, opened the cash box at gunpoint. Arguing that neither Babala nor Fournier opened the cash box, and arguing that their rights to control the contents of the cash box were inferior to the rights of VanAssche, defendant contends that the evidence was insufficient to support a conviction of robbing Babala and Fournier while armed.

The prosecutor responds by arguing that *McMichael* was wrongly decided. In the alternative, the prosecutor contends that this Court should not extend the *McMichael* analysis beyond the parent-child context. Instead, the prosecutor urges this Court to adopt the reasoning set forth in *People v Martin*, unpublished opinion per curiam of the Court of Appeals, issued August 22, 1995 (Docket No. 167348). In that case, two armed men entered a Burger King restaurant while a manager and two subordinate employees were present. *Id.*, slip op at 1. One of the men held the two subordinate employees in the break room, guarding them at gunpoint, while the other man forced the manager to open the company safe. *Id.* A jury convicted the defendant of three counts of armed robbery. *Id.*, slip op at 2. On appeal, the defendant cited *McMichael* in support of his argument that the subordinate employees, neither of whom knew the combination to the safe, lacked sufficient control over the money taken to be armed robbery victims. *Id.* This Court disagreed, declining to follow *McMichael* as an unpublished opinion. *Id.*, slip op at 2-3.

---

[2] Interestingly, defendant relies on *McMichael* for authority, rather than *Courts.*

Further, the *Martin* Court distinguished the *Courts* opinion on the ground that the parent-child relationship differs from that of manager and subordinate employee. *Id.*, slip op at 3. Therefore, the *Martin* Court upheld the defendant's three armed robbery convictions. *Id.*, slip op at 4.

We conclude that the *Martin* opinion was correct and that the *McMichael* opinion was wrongly decided. We reject defendant's argument, and the implication in *McMichael*, that a trial court should determine the number of armed robberies a defendant has committed by examining which of the alleged victims had the most superior right to possess the subject property. Rather, the proper analysis is to determine whether the alleged victims had a right to possession of the subject property superior to that of the defendant. The best discussion of this principle is found in *People v Needham*, 8 Mich App 679; 155 NW2d 267 (1967). In that case, when the defendant robbed the gasoline station, the person attending the cash register was neither an employee nor the employee's agent. *Id.* at 681-682. Nevertheless, this Court held that the victim's right to possess the stolen cash was sufficient to sustain the defendant's armed robbery conviction. *Id.* at 685-686.

The *Needham* opinion explained that the essence of armed robbery is not that the property belonged to the victim, but rather that it belonged to someone other than the thief. *Id.* at 683, quoting *State v Bowden*, 62 NJ Super 339; 162 A2d 911 (1960). To constitute an armed robbery, the property must be taken by force or violence, " 'not necessarily from the owner, but from any person in possession thereof whose right of possession is superior to that of the robber.' "

*Needham, supra* at 684, quoting *Barfield v State,* 137 Tex Crim 256; 129 SW2d 310 (1939). Further, " '[t]he robbery statute makes no specific reference to the element of ownership of the money or goods taken by the robber. It is enough that the cash or personalty belongs to someone other than the thief.' " *Needham, supra* at 685-686, quoting *State v Ford,* 92 NJ Super 356; 223 A2d 502 (1966).

Applying these principles, it is clear that a court must simply consider whether the victim had a greater right to the subject property than the defendant. If we accepted defendant's argument, and examined which of the alleged victims had the greatest right to the subject property, extraordinary consequences would result. A robber could enter a business, terrorize dozens of employees at gunpoint, and face only a single armed robbery conviction, as long as the robber fortuitously chose the most senior employee to hand over the company funds. Such a result would not conform with our Supreme Court's statement that the "appropriate 'unit of prosecution' for armed robbery is the person assaulted and robbed." *People v Wakeford,* 418 Mich 95, 112; 341 NW2d 68 (1983). When a defendant assaults and robs two or more persons during a single incident, he may be charged with and convicted of more than one armed robbery.

Although this Court in *Courts, supra,* impliedly accepted the reasoning in *McMichael,* we conclude that *Courts* is easily distinguishable from the present case. First, *Courts* involved parents and minor children, a situation presenting different considerations than a case involving supervisory and subordinate employees. Second, it is unclear from either the

*McMichael* opinion or the *Courts* opinion that the children were actually present during the assault and the robbery. It is entirely conceivable that the children were elsewhere in the home, or even asleep, when the robbery occurred. In that instance, it would be clear that the children were not assaulted and that the property was not taken from their presence. Third, the prosecutor in *Courts* concurred with the defendant's argument that two armed robbery convictions should be set aside. Therefore, the issue was not genuinely contested on appeal.

In the present case, it is clear that defendant assaulted all three employees with a sawed-off shotgun and stole money from the company's cash drawer, in the "presence" of all three employees. It is reasonable to assume that VanAssche, as store manager, had a superior right to possess the company's cash, when compared to Babala and Fournier. However, it is also clear that all three employees had a right to possess the company's cash superior to that of defendant. We conclude that the prosecutor presented sufficient evidence to support defendant's three armed robbery convictions.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that his trial counsel rendered ineffective assistance because he failed to object to evidence regarding defendant's prior criminal record. Because defendant failed to move for a *Ginther*[3] hearing or a new trial on the basis of ineffective assistance of counsel, our review of this claim

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

is limited to mistakes apparent on the record. *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Defendant must further demonstrate a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, *and* the attendant proceedings were fundamentally unfair or unreliable. *People v Poole*, 218 Mich App 702, 718; 555 NW2d 485 (1996) (emphasis in original). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Defendant argues that his trial counsel should have requested a mistrial in response to a statement made by the court clerk. For purposes of the charge of felon in possession of a firearm, the prosecutor stipulated that the jury would be informed only that defendant had been convicted of a felony, and would not be specifically informed that he had been convicted of armed robbery. However, when reading the charges for the prospective jurors at the start of jury selection, the court clerk stated that defendant had been convicted of armed robbery. Defense counsel did not move for a mistrial.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citation omitted). This Court has previously ruled that a court clerk's single mention of the defen-

dant's specific prior felony to the jury pool, where the trial court instructed the jury that it was to separately determine each of the charges against the defendant, did not result in manifest injustice. *People v Green*, 228 Mich App 684, 691-692; 580 NW2d 444 (1998). In the present case, the trial court likewise instructed the jury to consider each charge separately. Just as no manifest injustice occurred in *Green*, the minor irregularity in the present case would not have warranted a new trial. Because "[c]ounsel is not obligated to make futile objections," *People v Meadows*, 175 Mich App 355, 362; 437 NW2d 405 (1989), defendant's trial counsel was not ineffective for failing to move for a mistrial.

Defendant next argues that his trial counsel was ineffective because counsel failed to prevent the jury from hearing testimony concerning defendant's two earlier convictions of armed robbery and one earlier conviction of breaking and entering a motor vehicle. A defendant pressing an ineffective assistance claim must overcome a strong presumption that counsel's tactics constituted sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy, even if that strategy backfired. *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987). Because we conclude that defense counsel's failure to object to this testimony was a matter of sound trial strategy, defendant's claim is without merit.

MRE 609 permits a prosecutor to introduce evidence regarding prior convictions of crimes involving dishonesty or theft, for the purpose of attacking a witness' credibility. The record in this case does not

indicate whether the trial court ruled on the use of such evidence for that purpose. Nevertheless, it is reasonable to suppose that defense counsel anticipated that defendant's recent armed robbery conviction and his conviction of breaking and entering a motor vehicle would both come to the jury's attention in this manner.[4] On direct examination, defendant therefore testified about his prior record, in a fairly typical effort to take the "sting" out of his criminal history.

Where a prosecutor would have the option of impeaching the defendant with a prior conviction, the defendant may not mitigate the damage by fronting the conviction and then argue on appeal that admission of the testimony was error. *Ohler v United States*, 529 US 753; 120 S Ct 1851; 146 L Ed 2d 826 (2000). "The defendant must choose whether to introduce the conviction on direct examination and remove the sting or to take her chances with the prosecutor's possible elicitation of the conviction on cross-examination." *Id.* at 758. Although the issue in the present case is not the admissibility of defendant's convictions, but rather defense counsel's competence in the matter, *Ohler* makes clear that it may be sound trial strategy for a defendant to front a conviction that is likely to come to the jury's attention on cross-examination. *Id.*

Defendant had no need to front his twenty-year-old armed robbery conviction, because convictions over ten years old may not be used for impeachment purposes. MRE 609(c). However, it was defendant who

---

[4] Defendant does not argue that the trial court had ruled any of his earlier convictions inadmissible for impeachment purposes.

personally volunteered that information, in response to counsel's general question concerning whether defendant had been in trouble before. Then, on cross-examination, defendant volunteered that he had actually committed the robbery for which he had been convicted. Without encouragement from counsel, defendant seemed determined to use the old conviction as a means of distancing his present self from his criminal past. Because defendant himself offered this information, and nowhere suggests that he did so on the bad advice of counsel, defendant will not be heard to complain on appeal that the admission of this testimony constituted error on the part of his attorney.

Further, the trial court instructed the jury that evidence of defendant's past convictions was admissible for no purpose other than to help the jury assess defendant's credibility. The court specifically stated that a "past conviction is not evidence that the defendant committed the alleged crime in this case." Juries are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Assuming that the jury did so in this instance, it did not consider defendant's earlier convictions as evidence that defendant acted in conformance with his earlier misdeeds.

Finally, defendant argues that his trial counsel rendered ineffective assistance regarding the testimony of defendant's ex-girlfriend. On cross-examination, defense counsel elicited from the witness that she was angry with defendant. On re-direct examination, the prosecutor elicited from the witness that she ended her relationship with defendant because "[h]e was robbing people." Defense counsel did not object

to that testimony and did not request a special instruction. Rather, defense counsel elicited from the witness on recross-examination that defendant was robbing "dope dealers" and that the witness was angry with defendant because he was not sharing the robbery proceeds with her.

It was obviously sound trial strategy for defense counsel to elicit from this witness that she was angry with defendant. This is true, even at the risk of opening the door to details concerning why the witness ended her relationship with defendant. When the witness stated that defendant was "robbing people," a curative instruction would have likely highlighted the statement, to defendant's detriment. Defense counsel thus engaged in sensible damage control when he elicited the fact that defendant was only robbing "dope dealers," as opposed to law-abiding citizens, and that the witness wanted a larger share of the take. We conclude that defense counsel was not ineffective in his handling of this witness' testimony.

Moreover, even if we did conclude that defense counsel committed serious prejudicial error in the above respects, reversal would not be required unless a better job of lawyering would likely have produced a different result, or unless counsel's errors rendered the proceedings fundamentally unfair or unreliable. *Poole, supra* at 718. In this case, defendant did not refute the victims' account of the crime, beyond claiming mistaken identity. All three victims unequivocally identified defendant as the robber. In light of this overwhelming evidence of defendant's guilt, any mistakes on the part of defense counsel were unlikely to have influenced the verdict, or to have called the

fairness or reliability of defendant's trial into question.

### IV. SENTENCING

Defendant next contends that the trial court abused its discretion in sentencing defendant to life imprisonment for each of his armed robbery convictions. Defendant argues that the trial court retracted the sentences that it initially announced from the bench, imposing longer sentences simply because defendant failed to behave in a deferential manner during sentencing.[5] However, the trial court was authorized to impose three life sentences for defendant's three armed robbery convictions. MCL 750.529. This is particularly true, given defendant's status as a third-offense habitual offender. MCL 769.11(1)(b).[6]

> This Court reviews a trial court's sentence imposed on an habitual offender for an abuse of discretion. A trial court does not abuse its discretion in sentencing an habitual offender within the statutory limits established by the Legislature when the offender's underlying felony, in the context of previous felonies, evinces the defendant's inability to conform his conduct to the laws of society. [*People v Reyn-*

---

[5] Defendant also premised his sentencing challenge on his argument that he was guilty of committing only one armed robbery, rather than three armed robberies. Defendant argued that the trial court might not have imposed a life sentence for the first armed robbery conviction, if it were not for the other two convictions. Given our conclusion that defendant was properly convicted on all three armed robbery counts, defendant's argument in this regard is without merit.

[6] Although the prosecutor stresses defendant's eligibility for parole under the trial court's sentence, a defendant's eligibility for parole is not a valid sentencing consideration. *People v Wybrecht*, 222 Mich App 160, 173; 564 NW2d 903 (1997). We likewise disregard a defendant's prospects for parole when reviewing the proportionality of a defendant's sentence.

*olds*, 240 Mich App 250, 252; 611 NW2d 316 (2000) (citation omitted).]

We cannot say that defendant's life sentences do not satisfy these criteria. Defendant served the maximum sentences for previous convictions of first-degree criminal sexual assault and assault with intent to rob while armed. Not long after his release from prison, and just weeks before the armed robberies involved here, defendant committed another armed robbery, and was convicted and sentenced to a lengthy term of imprisonment for that offense. In light of defendant's extensive criminal history, his poor prison record, his hasty and repeated resort to armed robbery shortly after his release from prison, and his violent threat to kill at least two of the victims here, we cannot say that the trial court's sentence constituted an abuse of discretion.

Affirmed.

MCDONALD, J., did not participate.