# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JARVIS JEMEL BOYKINS,

      Defendant-Appellant.

UNPUBLISHED
November 17, 2015

No. 322308
Wayne Circuit Court
LC No. 13-011204-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b, for the shooting death of his roommate, David Harbin. Defendant challenges the charges presented to the jury and the jury instructions, as well as the conduct of both the prosecutor and defense counsel. These claims are all without merit and we affirm.

## I. BACKGROUND

On the morning of August 18, 2013, David Harbin's sisters found him lying dead on the floor of his Detroit home. An autopsy later revealed that Harbin died from three shotgun wounds to his face, elbow, and lower chest. The night before, Harbin had complained to one of his sisters on the phone that someone had stolen his video game system. She had not sensed at that time that Harbin was in danger.

The police tried to question defendant about the shooting as he and the victim resided together. Defendant fled town and was arrested on other charges two months later in Ohio. There was no physical evidence linking defendant to the shooting and his convictions were based on his statements to fellow prisoners. Defendant told three separate inmates about the shooting, including that Harbin had accused him of stealing a video game and that he had used Harbin's own shotgun to shoot him three times.

## II. JURY INSTRUCTIONS

Through his appellate counsel and in an in propria persona brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant contends that the trial court erroneously rejected his request to instruct the jury on the lesser included offense of

-1-

voluntary manslaughter, and that the court should not have instructed the jury on first-degree murder.

We find no error in the trial court's refusal to instruct the jury on voluntary manslaughter. We review de novo underlying legal questions pertaining to jury instruction issues, and for an abuse of discretion the trial court's determination regarding the applicability of a jury instruction to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

Voluntary manslaughter is a necessarily included lesser offense of murder. *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). " '[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it.' " *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007) (alteration in original), quoting *People v Cornell*, 466 Mich 335, 357; 711 NW2d 83 (2006). "Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Mendoza*, 468 Mich at 541.

To support instructing the jury on voluntary manslaughter, there must be evidence from which a jury could rationally conclude that the defendant acted "in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012). The "passion" necessary to support a voluntary manslaughter instruction must be "that which would cause a reasonable person to lose control." *People v Tierney*, 266 Mich App 687, 715; 703 NW2d 204 (2005).

A rational view of the evidence did not support the provision of a voluntary manslaughter instruction. Defendant described the night's events to three fellow inmates and each repeated those stories to the jury. As described in this second-hand manner, the evidence shows that the argument between defendant and Harbin began when Harbin accused defendant of stealing a video game. Early on, defendant retrieved Harbin's shotgun from his bedroom, but Harbin was able to calm defendant down. Harbin assured defendant that he had no intention of using the shotgun against defendant because the matter was "not that serious." Shortly thereafter, Harbin went outside to urinate. Defendant claimed that Harbin gave him a "mean look" at that time. Defendant became convinced that Harbin had telephoned his brother to ask him to come over and kill defendant. Accordingly, defendant again took the shotgun from Harbin's room, loaded it, and collected some extra shotgun shells. Defendant then sat in the living room awaiting Harbin's reentry. Upon Harbin's return, defendant shot him three times. Between each shot, defendant was required to reload the weapon.

Defendant's description of events to his fellow inmates does not support that he acted in the heat of passion. Harbin accused defendant of stealing a video game, but Harbin also assured defendant that the quarrel was not serious enough to ignite violence. A "mean look" is not sufficient justification to inflame such a violent response, and any notion that Harbin had summoned a hit man was irrationally conceived. The events of the evening certainly would not

have caused a reasonable person to lose control as defendant did. Moreover, there was more than adequate time for defendant to control his passions. In between each firing of the shotgun, defendant had to stop and reload the weapon. After the first and second shot, defendant would have had the opportunity to see the devastating results of his actions. Despite the time in between and the opportunity to rethink his decision, defendant shot Harbin three times. Given this evidence, there was no ground to instruct the jury on voluntary manslaughter and the court acted within its discretion in denying defendant's request.

We also discern no error in the trial court's presentation of the first-degree murder charge to the jury. A court may only present a charge to the jury if the prosecutor has presented sufficient evidence from which the jury could conclude beyond a reasonable doubt that the elements of the charge have been satisfied. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). Defendant failed to preserve his challenge by seeking a directed verdict on the first-degree murder charge, *People v Lugo*, 214 Mich App 699, 711; 542 NW2d 921 (1995), and our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

To establish first-degree premeditated murder, the prosecutor must prove that "the defendant intentionally killed the victim with premeditation and deliberation." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). Deliberation and premeditation may be inferred from the various circumstances surrounding the killing, including the number of wounds suffered by the victim. *People v Unger*, 278 Mich App 210, 229, 231; 749 NW2d 272 (2008). Evidence of multiple injuries tends to support that the defendant had time to reconsider his actions, supporting that his conduct was deliberative. *Id*. at 231.

When Harbin went outside, defendant consciously chose to retrieve Harbin's shotgun and load it. Defendant lay in wait in the living room armed with the loaded shotgun until his victim came back inside. Defendant took the time to shoot Harbin three times, reloading the single-shot weapon after firing the first and second time. That defendant sat waiting in deliberation and then fired and reloaded the gun multiple times was sufficient to support the presentation of a first-degree premeditated murder charge to the jury. Again, defendant can establish no error.

### III. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor improperly vouched for the credibility of a state witness during opening statements. Specifically, in relation to one of the jailhouse snitches, the prosecutor stated: "I believe Mr. Ware was charged with armed robbery and felony[-]firearm and he was given a deal where he gets to go to prison for three to fifteen years in exchange for truthful testimony about what the Defendant said to him."

Defendant failed to preserve his challenge by raising a contemporaneous objection, *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. When reviewing a prosecutorial misconduct challenge, we must examine the entire record and consider the subject comments in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). The prosecutor is not permitted to "vouch for the credibility of his or her witnesses 'to the effect that [the prosecutor] has some special knowledge concerning a witness'[s] truthfulness.' "

*People v Wood*, 307 Mich App 485, 505; 862 NW2d 7 (2014), quoting *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, the defendant is only entitled to relief if the comments deprived him of the right to a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

This Court has held that a prosecutor may inform the jury during opening that a particular witness will testify pursuant to an agreement requiring the witness to testify truthfully without insinuating that he has special knowledge about the witness's veracity. *Wood*, 307 Mich App at 505-506. That is all the prosecutor did in this case. In any event, the court later instructed the jury that the attorneys' statements were not evidence and that it was the jury's role to assess the credibility of witnesses. These instructions were sufficient to cure any prejudicial effect the prosecutor's comment may have had. *Id*. at 506. Defendant is therefore not entitled to relief.

## IV. ASSISTANCE OF COUNSEL

Defendant finally asserts in his in pro per brief that his appointed trial attorney provided ineffective assistance. Defendant failed to preserve his challenge by requesting a new trial or a *Ginther*[1] hearing, and our review is limited to mistakes apparent on the existing record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

> "'[T]he right to counsel is the right to the effective assistance of counsel.'"
> *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984),
> quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed
> 2d 763 (1970). An ineffective assistance claim includes two components: "First,
> the defendant must show that counsel's performance was deficient. . . . Second,
> the defendant must show that the deficient performance prejudiced the defense."
> *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674
> (1984). To establish the deficiency component, a defendant must show that
> counsel's performance fell below "an objective standard of reasonableness" under
> "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663;
> 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must
> demonstrate a reasonable probability that but for counsel's errors, the result of the
> proceedings would have been different. *Id.* at 663-664. The defendant also must
> overcome the strong presumptions that "counsel's conduct [fell] within the wide
> range of reasonable professional assistance" and that counsel's actions were
> sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich
> App 151, 157-158; 858 NW2d 520 (2014).]

Defendant first asserts that defense counsel should have objected to the prosecutor's commentary on witness Ware's veracity during opening statement. As noted, the prosecutor's statement was proper. As any objection would have been without merit, defendant cannot establish an ineffective assistance claim on this ground. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant further avers that his counsel should have objected to the admission of his recorded jailhouse phone conversations because the prosecutor failed to establish the proper foundation for the authenticity of the evidence. Defendant cites a seven-part test for authenticating evidence set forth in *People v Taylor*, 18 Mich App 381; 171 NW2d 219 (1969), and claims the prosecutor was required to follow those steps. However, the enactment of MRE 901 superseded the *Taylor* test. *People v Berkey*, 437 Mich 40, 49-50; 467 NW2d 6 (1991). MRE 901(a) simply provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Here, the prosecutor presented the testimony of the police officer in charge of obtaining jailhouse phone call recordings and "dispersing them when needed." The officer described that jailhouse calls are automatically recorded by a computer system. The officer continued that the investigating officer contacted him and requested copies of defendant's recorded calls, which were provided. The calls played for the jury, the officer testified, were on the recording provided during the investigation. Thus, a witness with personal knowledge of how the evidence was created testified that the evidence was "what its proponent claims" as required by MRE 901(a). Any objection would have been without merit and counsel was not ineffective in this regard.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy