COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL MARKO KATRANIS,

Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 332968
Wayne Circuit Court
LC No. 15-009800-01-FH

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of placing an offensive or injurious substance on personal property with intent to injure, MCL 750.209(1)(a), and fourth-degree arson, MCL 750.75(1)(a)(i). The trial court sentenced defendant to serve concurrent prison terms of 3 to 15 years for the placing an injurious substance on personal property conviction and 1 to 5 years for the arson conviction. Defendant appeals by right and we affirm.

At 4:45 a.m. on November 4, 2015, defendant's brother-in-law, Danny Whited, witnessed someone dousing the truck belonging to defendant's sister, Nicole Katranis, with gasoline and lighting it on fire. The truck was parked outside Whited and Katranis's home. Whited identified defendant as the person he saw lighting the truck on fire. The defense theory at trial was that defendant, who was recovering from ankle surgery, was not involved, and could not have been moving around in the manner Whited described the person committing the arson.

Defendant first argues that his trial counsel provided ineffective assistance by failing to introduce medical evidence of his physical limitations resulting from his ankle surgery. We disagree.

Where defendant did not raise his claim of ineffective assistance of counsel in the trial court,[1] our review of defendant's claim is limited to errors apparent on the record. *People v*

---

[1] This Court denied defendant's motion seeking remand to the trial court on the basis of ineffective assistance of counsel. *People v Katranis*, unpublished order of the Court of Appeals, entered December 21, 2016 (Docket No. 332968).

*Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question whether defendant was deprived of his right to counsel is reviewed de novo. *Id*. at 242.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. As defendant points out, the "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (citations omitted).

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different. [*People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (citation omitted.)]

The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001) (citation omitted). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant argues that trial counsel's performance was deficient where medical evidence of defendant's ankle surgery and recovery was not introduced at trial. Katranis testified at trial that defendant had been evicted from their home in the beginning of September 2015. She noted that defendant broke his heel in August 2015, but she claimed that defendant was in a "cast or a boot" and could "get around pretty good," not "us[ing] the crutches all the time[ ]" when he left their home. However, defendant's brother, Jon Serda, testified that defendant broke his ankle two weeks before defendant moved in with him, which he recalled to be in late September or early October 2015. Serda testified that he transported defendant to an appointment at which defendant's hard cast was removed for a boot, and that this appointment took place after November 4, 2015. Serda further testified that while defendant was living at his home, he could only walk with the aid of crutches and that defendant "absolutely [could] not [ ]" run.[2]

Defendant now argues that medical evidence would have impeached Katranis's testimony and demonstrated that defendant was physically impaired at the time of the arson. Defendant has submitted medical documentation in support of his argument. A progress note dated October 23, 2015 confirms that defendant had surgery for a "calcaneal fracture[ ]" on September 5, 2015. According to the progress note, defendant had been using crutches for ambulation and "ha[d] been nonweightbearing to the left lower extremity[.]" The October 23 progress note indicated that defendant's fracture was healing without complications, and that he should "continue

---

[2] While we acknowledge that Katranis and Serda had differing recollections of when defendant underwent surgery, and his level of physical movement following surgery, contrary to defendant's unsubstantiated assertion on appeal there is nothing in the record to suggest that either witness was testifying falsely.

nonweightbearing in a Cam boot."[3]  Defendant was also instructed to increase his ankle joint's range of motion and follow up in two weeks.  An orthopaedic technician progress note confirmed that defendant's cast had been removed on October 2, 2015.  Thus, evidence that defendant had surgery in early September and was ambulating with crutches as late as October 23, 2015 would have conflicted with Katranis's testimony that defendant had surgery in August, was in a boot in early September and moving around with ease.  Further, this evidence could have bolstered defendant's defense by supporting his assertion that he was physically incapable of running away from the fire.  According to defendant, the admission of this evidence would have confirmed who was testifying truthfully, Katranis or Serda.

However, " '[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy,' which we will not second-guess with the benefit of hindsight.  Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (opinion of COOPER, J.) (footnotes and citations omitted; alteration in original).  A review of the record confirms that trial counsel presented the defense that defendant could not have committed the arson because he was physically unable to do so.  For example, trial counsel argued in closing that defendant was in a hard cast as of November 4, 2015, and was physically unable to (1) run in the manner that Whited testified to, or (2) participate in the arson at all.  Therefore, trial counsel may have reasonably surmised that it was best, as a matter of trial strategy, to avoid admission of the medical evidence, particularly where the evidence would have suggested that defendant's mobility may not have been as significantly impaired as trial counsel asserted during trial.  Accordingly, where the medical records at issue did not support the defense strategy pursued at trial, we are also not persuaded that trial counsel's "strategic choices [were] made after less than complete investigation[.]"  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

As an aside, defendant's citation to *People v Armstrong*, 490 Mich 290-291; 806 NW2d 676 (2011), is not persuasive.  In *Armstrong*, defense counsel unsuccessfully attempted to introduce the defendant's cellular telephone records to rebut the complainant's testimony that she had never contacted the defendant by telephone, and counsel acknowledged that he had not made the proper attempts to secure the custodian of the records to lay the proper foundation.  *Id*. at 287-288.  The cellular telephone records demonstrated that the complainant had contacted the defendant on "hundreds" of occasions, *id*. at 286-287, and defense counsel conceded that he did not have a strategic reason for his failure to introduce the cellular telephone records.  The Michigan Supreme Court acknowledged that "[a]dmission of the records would have caught the complainant in a lie[,] . . . [and] [a]ny attorney acting reasonably would have moved for the records' admission, particularly when, as here, attacking the complainant's credibility offered the most promising defense strategy."  *Id*. at 290-291.  In this appeal, as noted earlier in this opinion, while Katranis and Serda gave differing accounts of when defendant had surgery and his

---

[3]  A prescription dated October 23, 2015 from physician Brian G. Kissel, D.P.M. confirms that defendant was prescribed the boot with a "[d]uration of [n]eed for 6 months."

mobility following surgery, the instant case does not present one where it was abundantly clear from the record that a witness was giving false testimony.

Even if we were to accept defendant's argument that trial counsel's performance fell below an objective standard of reasonableness, *Jordan*, 275 Mich App at 667, defendant has not met the second prong of an ineffective assistance of counsel claim. Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.* (Citation omitted.) Put simply, the medical evidence at issue would not have contradicted the evidence at trial clearly identifying defendant as the individual who set his sister's truck on fire. Here, Whited, rather than Katranis, provided the testimony that identified defendant as the individual who set fire to the truck. Whited testified that as he looked out a north window of his house from which he could see Katranis's truck, he observed defendant with a gas can walking from a vehicle in an alley through a vacant lot to the truck, which he crouched behind, and then the truck ignited. Whited had known defendant for over 20 years, he was his brother-in-law, defendant had resided with him, and he was also familiar with the coat defendant was wearing at the time the arson was committed. Whited further testified that defendant fell backwards when the fire ignited and then ran off in the direction of the alley from which he came. Whited was also with Katranis when she located a gas can in a dumpster in the same alley. On this record, we are not persuaded that the result of defendant's trial would have been different had the medical evidence been admitted. *Id.*[4]

Defendant next argues that the trial court erred in scoring Offense Variable (OV) 1, and that trial counsel was deficient in failing to object to the scoring. We disagree.

This Court reviews the trial court's factual determinations at sentencing for clear error, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The interpretation and application of the legislative sentencing guidelines . . . involve legal questions . . . review[ed] de novo." *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009) (footnote and citation omitted).

Defendant argues that OV 1 should not have been scored at 20 points because he did not use gasoline as a weapon against a victim.[5] MCL 777.31(1) provides for the scoring of OV 1, the aggravated use of a weapon, at 20 points where:

---

[4] To the extent that defendant claims in his brief on appeal that remand to the trial court for an evidentiary hearing is necessary for us to consider defendant's claim of ineffective assistance of counsel, we conclude that no further "development of a factual record is required for appellate consideration of the issue." MCR 7.211(C)(1)(a)(*ii*).

[5] "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate sentencing guidelines range. *Id.* at 89 n 7.

(b) The victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device.

MCL 777.31(3)(b) provides that, " '[i]ncendiary device' includes gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device." In *People v Ball*, 297 Mich App 121, 125; 823 NW2d 150 (2012), this Court, turning to a dictionary, stated that the definition of a weapon in MCL 777.31 included "anything used against an opponent, adversary, or victim[.]" A victim is "each person who was placed in danger of injury or loss of life . . . ." MCL 777.31(2)(a). Thus, the trial court properly scored OV 1 at 20 points if a victim was subjected or exposed to the gasoline that defendant used to burn the truck.

The record reflects that defendant intentionally ignited gasoline on a vehicle likely containing gasoline that was right next to Whited and Katranis's house, approximately 10 feet from the area in which they and their two children were asleep. The ignition of the flames woke Katranis, and Whited could see defendant from the light of the flames. Thus, the record evidence supports the trial court's conclusion that Katranis and Whited were "subjected or exposed to[,]" MCL 777.31(1)(b), the flames from the gasoline that defendant used to commit the arson. Other victims exposed to the flames from the attack were Katranis and Whited's two children and the firefighters that responded to extinguish the fire. Whited and Katranis were further subjected to serious danger when they attempted to douse the flames before the fire department arrived. In fact, Whited reported that he injured his hand as a result of attempting to subdue the flames with a garden hose. Thus, we are satisfied that the trial court properly scored OV 1 at 20 points. Because any objection to scoring OV 1 at 20 points would not be meritorious, defendant's trial counsel was not deficient in declining to object. Counsel is not ineffective for declining to advance a futile objection. *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998).

Finally, defendant argues that the trial court violated his Sixth Amendment rights when it ordered restitution on the basis of facts that he did not admit and were not proved by a jury beyond a reasonable doubt. In *Apprendi v New Jersey,* 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne v United States*, 570 US ___, ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013), the United States Supreme Court found that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.*, citing *Apprendi,* 530 US at 483 n 10, 490. In *Southern Union Co v United States*, 567 US 343, 360; 132 S Ct 2344; 183 L Ed 2d 318 (2012), the United States Supreme Court concluded that "the rule of *Apprendi* applies to the imposition of criminal fines[,]" and recognized "that juries must determine facts that set a fine's maximum amount . . . [.]" Defendant argues that criminal fines are analogous to an order for restitution because they are both a punishment.

However, this Court considered a similar argument in *People v Corbin*, 312 Mich App 352, 372; 880 NW2d 2 (2015), and concluded that a "criminal fine and restitution are not synonymous[.]" This Court noted that a "plethora of federal circuit courts of appeal have held that 'judicial factfinding to determine the appropriate amount of restitution under a statute that does not prescribe a maximum does not implicate a defendant's Sixth Amendment rights.'" *Id*. (citation omitted). This Court further noted that other jurisdictions have found that "restitution is a civil rather than a criminal penalty," while others "consider restitution a criminal penalty but have nonetheless concluded that the Sixth Amendment erects no obstacle to judicial fact-finding as to the amount owed[.]" *Id*. The *Corbin* Court quoted reasoning from *United States v Leahy*, 438 F3d 328, 338 (CA 3, 2006), stating that restitution is a criminal punishment, but as a "restorative remedy that compensates victims for economic losses suffered as a result of a defendant's criminal conduct[,]" "it does not transform a defendant's punishment into something more severe than that authorized by pleading to, or being convicted of, the crime charged." *Corbin*, 312 Mich App at 372-373. Relying on the above precedent and reasoning, this Court concluded: "[w]e are unaware of any state or federal courts that have adopted defendant's constitutional argument and find it unavailing." *Id*. at 373. Subsequently, this Court in *People v Foster*, 319 Mich App 365, 389; ___ NW2d ___ (2017), recognized that "because a restitution order is not a penalty, the Sixth Amendment protections recognized in *Apprendi* do not apply." This Court reasoned that the remedial purpose of restitution is to reimburse the losses of crime victims as a result of a defendant's crime, as opposed to punishing criminal defendants. *Id*. This Court is bound to follow *Foster* and *Corbin*. See MCR 7.215(J)(1). Thus, defendant's arguments concerning his order of restitution are unavailing.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle