*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DEMETRIOS LASHAUN TRIPLETT, JR.,
Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

DEMETRIOS LASHAUN TRIPLETT, JR.,

        Respondent-Appellant.

UNPUBLISHED
May 30, 2019

No. 342645
Van Buren Circuit Court
Family Division
LC No. 15-018396-DL

---

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Respondent appeals by right the order of adjudication sustaining the charges of fourth-degree fleeing and eluding, MCL 257.602a(2), and possession of tobacco by a minor, MCL 722.642, and dismissing the charge of possession of marijuana, MCL 333.7403(2)(d). The trial court entered an order of disposition requiring that respondent abide by the guidelines of behavior including attendance and participation in school, complete 20 hours of community service, and write a 2-page essay on "What I Have Learned From My Court Experience." We affirm.

## I. BASIC FACTS

This case arises from an August 20, 2017 traffic stop. Respondent, sixteen years old at the time, was driving a red Ford Mustang with a defective headlight westbound on County Road 380 in Colombia Township, Van Buren County. Van Buren Sheriff's Deputy Daniel Rowse testified at respondent's trial that he was patrolling eastbound on County Road 380 in a fully marked police car when he passed the Mustang and, noticing the defective headlight, attempted to turn around and catch up with it. However, while executing a multi-point turn on the narrow road, the deputy lost sight of the car. After briefly searching the area, Deputy Rowse saw a Ford Mustang in a private drive, a couple hundred feet from the road ("the first driveway"). The vehicle's taillights were on and the car appeared to be running. Deputy Rowse explained that he

then positioned himself approximately 100 yards west of that driveway, on the edge of a blueberry field, and watched the driveway to see what the vehicle would do.

Approximately three minutes later, Deputy Rowse testified, he saw the Mustang, with its defective headlight, pull out of the driveway and continue traveling westbound on County Road 380. Deputy Rowse pursued the vehicle and accelerated in an attempt to catch up, but the Mustang was also accelerating in what the deputy believed was an attempt to evade a traffic stop. Deputy Rowse activated his overhead flashing lights to conduct a stop of the Mustang. The Mustang did not stop right away, and to the backdrop of the sound of respondent's Mustang engine accelerating, Deputy Rowse can be heard in a video recording inside his vehicle reporting on his dispatch radio that "I've got one not stopping."[1] Right then, rather than pulling onto the side of the road, respondent very swiftly pulled into a private drive on the north side of County Road 380. Deputy Rowse testified that as respondent's car entered the dirt portion of the driveway it fishtailed, kicking up a cloud of dust. Deputy Rowse followed and initiated contact with respondent and his passenger and can be heard in the video asking them "why you guys trying to dip out?" and "you pulled in here hot."

Respondent testified that he was going 55 miles per hour when the officer activated his overhead flashing lights and that he stopped about "nine seconds" after the lights were activated. Deputy Rowse testified that it was about 15 seconds. The video showed a lapse of 15 seconds from the time the deputy activated his overhead lights until respondent turned into the second driveway. Respondent testified that when he saw that the patrol car's lights had activated, he slowed down as safely as he thought he could and pulled into his friend's driveway to stop. He stated that his destination was "just where they happened to catch-pull me over at." Respondent insisted that he was not attempting to run or hide from the police. Asked why he pulled into the first driveway, respondent indicated that he knew his headlight was defective, he did not have the money to have it repaired, and he thought he would pull in and let the deputy go past him, reasoning, "No need to pull me over if I'm not doing nothing wrong, but going home."

Respondent was charged, convicted after a bench trial, and sentenced as indicated. This appeal followed.

## II. ANALYSIS

Respondent argues that his trial counsel was ineffective for failing to advise him of the pros and cons of testifying in his own defense and for failing to discuss possible defense strategies with him. We disagree. In general, a determination whether a respondent received effective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews findings of fact for

---

[1] The prosecution admitted into evidence and played for the trial court a video of the pursuit, starting with Deputy Rowse's waiting near the blueberry field, and the eventual stop produced by the dash camera of Deputy Rowse's patrol car.

clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

In order to prevail on his claim of ineffective assistance of counsel, respondent had to prove: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Even if we assume for the sake of argument that respondent's trial counsel did not discuss with him the advantages and disadvantages of testifying in his own defense, respondent has failed to present evidence that, but for this alleged deficiency, the outcome of the bench trial would have been different. Contrary to respondent's assumption, the trial court did not rely on respondent's trial testimony to find him guilty of fleeing and eluding a police officer, but on the properly admitted dash camera video from Deputy Rowse's patrol vehicle. Ruling from the bench, the court said that it found respondent's reply to Deputy Rowse's question about why he pulled into the first driveway indicative of respondent's frame of mind. Referring to the video, the court said:

> I remembered him saying that he pulled into that driveway because he knew that he was gonna be stopped. And so, um, that shows then when he pulled out and suddenly the police officer was around him, he certainly had plenty of time. The officer turned on his lights right away. He had plenty of time to pull to the side of the road or to slow down and slowly go down the road to where he knew there was a driveway. Either way would've been fine, but it's very clear to me that it appears he was thinking hey, it worked once, I sped away and drove – pulled into a driveway, maybe it will work again. Unfortunately, this officer was too close behind him and he was not able to get away at that point. And, um, for whatever reason, he decided to speed down the road, pull into that driveway, where he was gonna apparently drop off his friend.

The court continued by noting that it had counted the lapse of time between when the deputy activated his lights and when respondent pulled into the second driveway and concluded that respondent had had plenty of time to stop before getting to the second driveway. The fact that he did not stop, coupled with his statement indicating, in the words of the court, "that he knew he was being followed earlier or that he would be . . . and he did not want to be pulled over," proved beyond a reasonable doubt that respondent was guilty of fleeing and eluding. In light of the fact that the trial court based its guilty verdict on the dash camera video and not on respondent's testimony, even if respondent's counsel had discussed with him the pros and cons of testifying, and even if respondent had elected not to testify, there is no reasonable probability that the outcome would have been different.

Respondent also contends that counsel rendered ineffective assistance by failing to discuss possible defenses with him. This contention is without merit. Respondent's counsel provided a defense consistent with respondent's explanation of events, arguing that respondent's pulling into the first driveway did not satisfy the elements of fourth-degree fleeing and eluding[2] because Deputy Rowse had not signaled respondent to bring his car to a stop, and that when the deputy did signal respondent to stop, respondent did so within seconds. Respondent does not indicate what other reasonable defenses might have been available under the circumstances, nor has he proven that, but for counsel's failure to discuss defenses with him, the outcome of the case would have been different. For the reasons stated above, respondent's claim of ineffective assistance must fail.

Affirmed.

/s/ Douglas J. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[2] Absent aggravating factors inapplicable here, a driver is guilty of fourth-degree fleeing and eluding if the driver violates MCL 257.602(a)(1), which provides:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.