*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAYMOND JOSEPH PEYERK,

        Defendant-Appellant.

UNPUBLISHED
September 11, 2025
1:32 PM

No. 370179
Huron Circuit Court
LC No. 2023-306947-FH

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Defendant, Raymond Joseph Peyerk, appeals as of right his jury trial convictions of one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and ten counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a). Peyerk was sentenced to concurrent terms of 8 to 15 years' incarceration for the CSC-III conviction, and 339 days (time served) for each CSC-IV conviction. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from allegations of Peyerk's repeated inappropriate touching of minor complainant and one incident of digital penetration. Peyerk and complainant's mother began a romantic relationship in September 2021, and the two resided together with their minor children, in addition to the children of complainant's mother from other relationships, including complainant. Peyerk treated complainant as a stepdaughter, and their relationship progressed to involve the two increasingly confiding in each other, Peyerk purchasing items for complainant, and, as of approximately 2020, Peyerk advancing sexual comments regarding complainant and her mother.

On February 19, 2023, while complainant remained living with Peyerk and her mother, complainant invited three friends for a sleepover in a camper on the property, during which alcohol was present. At approximately 9:00 a.m., the following morning, complainant's friends left the premises, and complainant lay down in her bed in the house, alone. Peyerk entered complainant's bedroom, and he attempted to engage her, but complainant informed Peyerk that she was trying to sleep. Later that morning, Peyerk reentered complainant's bedroom, and Peyerk sought to awaken

complainant by gently shaking her lower abdominal area while she slept on her side. When complainant "didn't say much," Peyerk put his hand inside complainant's underwear, and Peyerk placed his finger in her vagina. Complainant instructed Peyerk to stop, and she rolled over, away from Peyerk. Peyerk subsequently retracted his hand, and he briefly rubbed complainant's hip, slapped her buttocks, and made a comment as he left the room.

That afternoon, complainant retreated to the shower to cry, as it was the only place she had privacy; complainant was not permitted to close her bedroom door unless she was undressed. In the evening, Peyerk dropped complainant off at basketball practice. Complainant did not want to return to the car with Peyerk afterward, and complainant disclosed the earlier events of the day to her coach. The coach contacted law enforcement and child protective services; complainant's mother picked complainant up and she accompanied complainant to the hospital for an examination. During the examination, swabs were collected from complainant's vaginal area and back, after complainant reported that Peyerk kissed her back while touching her body in the bedroom.

A week before the February 20, 2023 incident, Peyerk had similarly went into complainant's bedroom when she was nearly asleep, and he slid his hands under complainant's shirt to fondle her breasts. Complainant contended that there were numerous instances in the year and a half preceding the subject incident during which Peyerk would playfully slap complainant's buttocks over her clothes and, on one occasion, Peyerk bent complainant over and pressed her clothed buttocks against his clothed groin while she was bending over to pick something up. Subsequently that day, complainant informed Peyerk that her back and shoulders hurt, Peyerk directed complainant to lie on his bed without a shirt or bra, and he rubbed lotion on complainant's back and sides. Complainant estimated that Peyerk touched her breasts or buttocks between 10 and 20 times since 2019 or 2020. Complainant did not disclose to her mother that Peyerk was touching complainant inappropriately, fearing it would upset her. However, complainant's friends were aware of the conduct and they avoided Peyerk.

At trial, a sexual assault nurse examiner testified that she examined complainant on February 20, 2023, and she collected swabs from complainant's "lower back, the vulva area, and the vaginal area." A forensic scientist with the Michigan State Police shared that she analyzed the three collected swabs, and the scientist determined that male DNA was present on the swab of complainant's lower back, but not on swabs of complainant's vulva or vagina. The forensic scientist explained it was "unsurprising" that the alleged digital penetration did not result in detectible DNA evidence, in light of the significant amount of female DNA generally present in a vaginal area, in conjunction with urination and washing. A second forensic scientist with the Michigan State Police tested the swab from the complainant's back and determined that there were three DNA contributors, with "very strong support" that Peyerk was one of them.

Following a two-day jury trial, Peyerk was convicted and sentenced as provided earlier. This appeal ensued.

## II.  OTHER-ACTS EVIDENCE

Peyerk argues that the trial court erroneously admitted other-acts evidence concerning his conduct toward complainant's mother.  We disagree.[1]

We review a trial court's evidentiary decisions for an abuse of discretion.  *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005).  The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).  "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion."  *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).  "This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence."  *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018).  An evidentiary error does not merit reversal in a criminal case unless it appears that it is "more probable than not that the error was outcome determinative."  *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

MRE 404(b) governs the admissibility of evidence of "[o]ther crimes, wrongs, or acts." This evidentiary rule is one "of legal relevance that limits only one category of logically relevant evidence: [i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible."  *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253 (2015) (alteration in original; quotation marks and citation omitted).  As explained by the Michigan Supreme Court, "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged."  *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012) (quotation marks and citation omitted).  MRE 404(b) provides, in pertinent part:

---

[1] We note that the prosecution, in its motion to use other-acts evidence, cited both MCL 768.27b and MRE 404(b) as grounds to admit the contested evidence.  However, neither the parties, nor the trial court, substantively addressed the admissibility of the evidence under MCL 768.27b during the lower court proceedings, despite the statute's apparent applicability.  The parties additionally do not discuss MCL 768.27b on appeal.  While we will address the admission of the challenged evidence under MRE 404(b), we opine that its admission also appears supported by MCL 768.27b, because this case involves the introduction of evidence of a separate sexual assault in a present sexual-assault proceeding.  See MCL 768.27b, as amended by 2024 PA 184 (stating, "Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403"); see also *People v Pattison*, 276 Mich App 613, 616; 741 NW2d 558 (2007) (concluding that when testimony "is admissible under MCL 768.27b," this Court "need not review whether the [ ] evidence was also admissible under MRE 404(b)").

(1) Prohibited Uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses.  If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.

This list is provided by way of example, not limitation.  *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000).  Further, evidence is not subject to exclusion under MRE 404(b) only because it discloses a bad act, because bad acts may be independently relevant as substantive evidence.  *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004), aff'd 473 Mich 399 (2005).

The Michigan Supreme Court has established a four-part test to assess whether other-acts evidence was properly admitted:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

For the first prong, the prosecution contended, during the lower court proceedings, that the other-acts evidence was being offered to prove a plan, scheme, or system of behavior, which is a proper purpose listed under MRE 404(b)(1).  *Denson*, 500 Mich at 398; *People v Knapp*, 244 Mich App 361, 378-380; 624 NW2d 227 (2001).

Concerning the second prong, our Supreme Court has "emphasized the importance of logical relevance, calling it the 'touchstone' of the admissibility of other-acts evidence," holding that other-acts evidence is "logically relevant if two components are present: materiality and probative value."  *Denson*, 500 Mich at 401; MRE 401.  "Materiality is the requirement that the other-acts evidence be related to 'any fact that is of consequence' to the action."  *Id*. (quotation marks and citation omitted).  Stated alternatively, "is the fact to be proven truly in issue?"  *Id*. (quotation marks and citation omitted).  Evidence is probative if "it has any tendency to make a fact more or less probable than it would be without the evidence," and, "the fact is of consequence in determining the action."  MRE 401.  In examining the probative value of the evidence under MRE 404(b)(1), "the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime."  *Denson*, 500 Mich at 402 (quotation marks and citation omitted).

Regarding a claim that the evidence was relevant to demonstrate a plan, scheme, or system on a defendant's part, the Michigan Supreme Court has explained, "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are

manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. "Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id*. Rather, "[t]o establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." *Id*. at 65-66 (quotation marks and citation omitted). The degree of similarity required to establish a common scheme in committing an offense is "greater than that needed to prove intent, but less than that needed to prove identity." *Id*. at 65.

In the instant matter, Peyerk was charged and convicted of one count of CSC-III and ten counts of CSC-IV after he was accused of sexually abusing complainant. The record indicated that Peyerk approached complainant while she was asleep, and Peyerk opted to inappropriately touch complainant when she was initially unresponsive. At trial, the prosecution presented the testimony of complainant's mother, who asserted that Peyerk had sexually assaulted her. Complainant's mother testified that in March 2023, after complainant disclosed Peyerk's abuse, complainant's mother was separated from Peyerk and she was staying on a couch at a friend's home. While she was asleep, Peyerk appeared, uninvited, and he awakened complainant's mother. Peyerk placed his hand inside the bra of complainant's mother, "holding [her] breast," while Peyerk was crying and apologizing to her, and Peyerk held her breast until he left, leaving complainant's mother "shock[ed]" and "scared."

We conclude that the trial court properly determined that this testimony was similar enough to the charged conduct in this case "to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. Peyerk attempts to distinguish between the two acts, contending that he was in a romantic relationship with complainant's mother, an adult, whereas he maintained a quasi-parental relationship with minor complainant. However, complainant's mother testified that her relationship with Peyerk had ended before her alleged sexual assault in March 2023. Complainant's mother further stated that she was shocked to encounter Peyerk, and she was unaware of how Peyerk learned of her location. Thus, Peyerk's "interaction" with complainant's mother did not occur within the context of a *consensual* sexual relationship, and in that respect, was similar to the conduct underlying the tried offenses. Further, Peyerk's execution of the proposed conduct and charged conduct was analogous. Peyerk approached physically developed female persons, with whom he had previously held positions of trust, while they were asleep and vulnerable, and touched their intimate anatomy for his sexual gratification. See *Knapp*, 244 Mich App at 380 (stating, "The similar acts evidence was relevant to show that defendant touched complainant for the purpose of his own sexual gratification"). Those common features indicated that Peyerk systemically engaged in touching a familiar female person's sexual anatomy while she was asleep and incapable of immediate resistance. See *Sabin*, 463 Mich at 66 (stating that "evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts") (quotation marks and citation omitted).

It is evident that the alleged sexual assault of complainant's mother was similar to the charged conduct in this case, and amounted to more than "a series of similar spontaneous acts . . . ." *Id*. at 65-66. Rather, the sexual assaults disclosed behavior "sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id*. at 63. Although

there were distinctions between the two sexual-abuse incidents, they were not mandated to be identical to be admissible under MRE 404(b). *Id*. at 63-64. Moreover, even if this case was "one in which reasonable persons could disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by defendant in committing the acts," our appellate courts have consistently observed, "the trial court's decision on a close evidentiary question such as this one ordinarily cannot be an abuse of discretion." *Id*. at 67-68. Ultimately, because the other-acts evidence permitted the jury to make an inference that "the defendant employed that plan in committing the charged offense," the trial court properly concluded that it was logically relevant to the stated purpose for the evidence, pursuant to MRE 404(b). *Id*. at 66 (quotation marks and citation omitted).

With respect to the third prong, a court must determine whether the proposed evidence is subject to exclusion under MRE 403. *Denson*, 500 Mich at 398. MRE 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As noted by the Michigan Supreme Court, "All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909, mod 450 Mich 1212 (1995). This entails a two-part inquiry: "First, this Court must decide whether introduction of [the] evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011). Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it would be otherwise "inequitable" to permit use of the evidence. *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). "However, in applying MRE 403, 'unfair prejudice' does not mean 'damaging[.]' " *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003) (quotation marks and citation omitted). Rather, such apprehensions arise when "the tendency of the proposed evidence [is] to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citation omitted). Additional concerns include "the danger of confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 489 (quotation marks and citation omitted).

We conclude that the trial court's decision to allow evidence of Peyerk's other acts did not unfairly prejudice Peyerk at trial. We recognize that Peyerk was not charged with the sexual assault of complainant's mother, but the risk that the jury may have misconstrued the purpose of her testimony and convicted Peyerk on the basis of the other-acts evidence was minimal, particularly given the numerous counts relating solely to his conduct toward complainant, the parental relationship between the two witnesses, the timeline of Peyerk's alleged acts against complainant compared to those involving her mother, and the fact that the conduct toward complainant's mother was not significantly more shocking than the tried conduct. See *Cameron*, 291 Mich App at 611-612 (stating, "In this case, the prejudicial effect of other-acts evidence did not stir such passion as to divert the jury from rational consideration of [the defendant's] guilt or

innocence of the charged offenses"). Moreover, the trial court's instructions to the jury included an express statement that the jurors were mandated to find Peyerk sexually assaulted complainant beyond a reasonable doubt to convict him of each count of CSC-III and CSC-IV. *Id*. at 612. The court additionally detailed in its jury instructions:

> . . .[Y]ou have heard evidence that was introduced to show that the Defendant committed an act for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether the evidence tends to show that the Defendant used a plan, system, or characteristic scheme that he has used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes. You must not convict the Defendant here because you think he is guilty of other bad conduct.

Further, we opine that any prejudicial effect of the trial court's decision to permit evidence of Peyerk's other acts did not substantially outweigh the probative value of the evidence. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *Cameron*, 291 Mich App at 612. The trial court determined that Peyerk's bad acts were relevant and therefore admissible to establish Peyerk maintained a common plan, scheme, or system in assaulting sleeping female persons, with whom he previously maintained a trusting relationship, for his sexual gratification. Considering the foregoing, the danger of unfair prejudice caused by the other-acts evidence did not "substantially outweigh" its significant probative value; thus, the evidence was not excludable under MRE 403. *Id*.

Concerning the final prong, as noted, the trial court provided a limiting instruction regarding how the evidence was to be used by the jury. *Denson*, 500 Mich at 398. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted). Accordingly, the trial court's jury instruction reinforces our conclusion that the contested evidence was properly admitted.

As the trial court correctly admitted the challenged other-acts evidence under MRE 404(b), reversal is not warranted on this ground. We further note that if we determined that the trial court erred by admitting the other-acts evidence under MRE 404(b), MCL 768.27b(1) would allow the admission of this evidence on retrial. See MCL 768.27b, as amended by 2024 PA 184; see also *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568) (HOOD, J., concurring in part and dissenting in part); slip op at 1 (explaining, "MRE 404(b) permits other-acts evidence for a nonpropensity purpose, and MCL 768.27b permits other-acts evidence (of domestic violence or sexual assault) for any purpose for which it is relevant").[2] Consequently, even if the trial court had erred in its original admission of evidence, Peyerk's arguments concerning MRE 404(b) appear to be harmless because the contested evidence was admissible under MCL 768.27b(1). *People v Pattison*, 276 Mich App 613, 616; 741 NW2d 558 (2007).

---

[2] Concurring opinions are not binding, but may be considered for their persuasive value. *People v Lucynski*, 509 Mich 618, 651; 983 NW2d 827 (2022).

-7-

## III. ADJOURNMENT

Peyerk argues that the trial court improperly denied his counsel's motion for an adjournment of trial because of the late production of certain medical reports. We disagree.

This Court reviews a trial court's decision regarding whether to grant an adjournment for an abuse of discretion. *People v Grace*, 258 Mich App 274, 276; 671 NW2d 554 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

A request for an adjournment of trial must be made by motion, stipulation in writing, or orally in open court and must be on the basis of good cause. MCR 2.503. "In its discretion the court may grant an adjournment to promote the cause of justice." MCR 2.503(D)(1). A "defendant must show both good cause and diligence" to establish that an adjournment may be necessary. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). The factors to evaluate when determining whether good cause exists include whether the defendant "(1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id*. (quotation marks and citation omitted).

In this case, defense counsel requested an adjournment in order to review the entirety of complainant's CSC examination reports, including 37 pages of allegedly previously undisclosed medical records received the week before trial. The timing of the production of relevant medical documents appears to be a legitimate reason for the request, and although there were varying statements regarding exactly when the contested material was provided to defense counsel, there is no indication that Peyerk was negligent in acquiring the reports or that he previously requested an adjournment. Moreover, Peyerk requested an adjournment shortly after the materials were produced. Peyerk can arguably demonstrate good cause for requesting an adjournment with respect to the production of the comprehensive CSC reports.

But despite Peyerk's contentions to the contrary, his motion to adjourn trial was not based on the assertion of a constitutional right. Peyerk argues that the "trial court's insistence that the trial proceed as he was unable to challenge the critical evidence that established his guilt" amounted to a violation of his right to present a defense. We recognize that criminal defendants have a constitutional right to present a defense. US Const, Am VI; Const 1963, art 1, § 20. However, Peyerk neglects to establish how further review of the delayed materials may have been useful in challenging the prosecution's case. See *People v Daniels*, 311 Mich App 257, 266-267; 874 NW2d 732 (2015) (stating, "Here, defendant unconvincingly claims that the trial court deprived him of his right to present a defense when it denied his request for an adjournment," when the defendant "failed to offer any proof that (1) [the expert witness] would testify on his behalf or (2) her expertise would be relevant or helpful to the jury").

Further, "[e]ven if good cause is shown, the trial court's denial of a request for an adjournment . . . is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. at 266 (alteration in original; quotation marks and citation omitted). As previously noted, Peyerk fails to show how the limited time to scrutinize complainant's CSC reports prejudiced him in any significant way. Peyerk contends that complainant's potential alcohol consumption the night before the February 2023 incident, as detailed in the reports, may

have served as a ground to challenge complainant's credibility or recollection of the subject incident. However, at trial, complainant provided testimony, on both direct and cross-examination, consistent with the content of the contested materials, namely, that complainant had consumed alcohol the night before with friends in the camper where they were having a sleepover. Moreover, Peyerk has not explained how he was unprepared to address or respond to any particular information in the CSC reports. Accordingly, we conclude that Peyerk has not demonstrated that he was prejudiced by the trial court's denial of his request for adjournment on the basis of the production of pertinent medical records.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Peyerk argues that his trial counsel was ineffective for failing to move for a mistrial after complainant's testimony. We disagree.

To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move in the trial court for a new trial or an evidentiary hearing, *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018), or move in this Court to remand for a *Ginther*[3] hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because Peyerk did neither, this issue is therefore unpreserved. "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "Constitutional questions of law are reviewed de novo, while findings of fact are reviewed for clear error." *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020). "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *Id*.

A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). A defendant claiming ineffective assistance of counsel must demonstrate: "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, 335 Mich App at 228. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citations omitted). "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *Id*. (citations omitted).

On appeal, Peyerk contends that he was deprived of effective assistance of counsel because defense counsel neglected to move for a mistrial despite complainant's "repeated highly prejudicial references to [Peyerk's] incarceration." During complainant's direct examination at trial, complainant was asked whether she knew Peyerk, and whether he was present in the

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

courtroom. Complainant presumably pointed to Peyerk responding, "There. He's not in orange this time. It's very different." The prosecution replied, "The question is, though, do you recognize him?" Complainant answered, "Yes. He's right over there." As the prosecution requested that the record reflect complainant identified Peyerk, complainant interjected, "I'm surprised he's not in orange this time," resulting in the prosecution instructing complainant to confine her responses to the questions presented.

The trial court subsequently excused the jury, directed the parties to approach the bench, and explained that it heard defense counsel "gasp" when complainant shared that she "didn't recognize [Peyerk] because he wasn't in orange." The court opined, "The Court is going to instruct the jury, one, that they are not to consider that comment in any way, shape, or form; that it is not evidence." The trial court further stated, "I'm also instructing the witness in this case that, as it pertains to the Defendant being incarcerated, or in jail clothing, or anything like that, that is not to be brought before the jury." Defense counsel affirmed that the instruction was warranted, but she desired to "preserve [her] argument for a mistrial after break and do appropriate research on it," because complainant's improper comments were a "bell that can't be unrung." Upon the jury's return, the court instructed the jurors, "Anything, any testimony relative to color of clothing is not evidence and is not to be considered by you. It is stricken from the record. You are not to consider any of that when it comes to your deliberations in this case." Defense counsel did not move for a mistrial on this basis during the lower court proceedings.

Peyerk argues that complainant's testimony, indicating that her last interaction with Peyerk was while he was dressed in custodial attire, impermissibly undermined his right to a fair trial and the presumption of innocence. Peyerk's primary contention is that complainant's statements that "he's not in orange this time" informed the jurors that Peyerk was detained before trial, thereby encouraging the jury to find Peyerk guilty because of his previous custodial status. In *People v Horton*, 341 Mich App 397, 401-402; 989 NW2d 885 (2022), this Court detailed:

> The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent. *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016) (citation omitted). "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (quotation marks and citation omitted).
>
> The idea that criminal defendants cannot be forced to appear before the jury in jail garb was first recognized in Michigan when our Supreme Court decided *People v Shaw*, 381 Mich 467; 164 NW2d 7 (1969). The Court stated that defendants are "entitled to wear civilian clothes rather than prison clothing" because it is important that a defendant "be brought before the court with the appearance, dignity, and self-respect of a free and innocent man . . . ." *Id*. at 474 (quotation marks and citation omitted). The United States Supreme Court subsequently recognized the right of criminal defendants to be tried in civilian

-10-

clothing in *Estelle v Williams*, 425 US 501; 96 S Ct 1691; 48 L Ed 2d 126 (1976). "This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Id*. at 504-505.

While *Horton* addressed a defendant appearing in a custodial uniform during trial, the cited principles are pertinent to this case, at least in part. Notably, the main concern with respect to a defendant attending trial while wearing a custodial jumpsuit is the potential infringement on his presumption of innocence, as the jury may presuppose guilt solely from his presence in jail. *Id*.

In *Horton*, this Court examined whether the admission of video evidence depicting the defendant in "jail garb" impermissibly undermined the presumption of innocence in violation of his due-process rights. *Id*. The *Horton* Court answered negatively opining that "the concerns that guided the Michigan and United States Supreme Courts in holding that a defendant cannot be forced to wear jail garb at trial are not present in this case." *Id*. This Court explained:

> If a defendant wore jail garb for the entirety of the trial, then the only image the jury would have of the defendant would be of him dressed in incriminating clothing. This would be substantially more damaging than a scenario, such as this, in which the jury briefly saw a video of the defendant wearing jail garb but only saw him wearing civilian clothing when in person at trial. [*Id*. at 402-403.]

The *Horton* Court held, "Because playing the video of the complaining witness's preliminary-examination testimony—where defendant appears in jail garb—would not undermine the presumption of innocence, it does not violate his due-process rights." *Id*. at 403.

This Court reached a similar conclusion in *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 19-20, when it considered whether a prospective juror's statement during voir dire—that, as a deputy sheriff employed at the county jail, he saw both defendant or defense counsel every day at work—violated the defendant's right to the presumption of innocence. This Court expressed concerns that if the jurors learned that the defendant had been in jail, the defendant's "right to be presumed innocent would be affected because jurors might presuppose guilt from the fact the defendant was in jail." *Id*. at ___; slip op at 20. The *Serges* Court resolved, however, because the juror was excused and only some jurors heard the statement, that the defendant was not denied of a fair trial stating, "We conclude that the brief statement regarding defendant being in jail did not affect the fairness of defendant's trial or undermine the presumption of innocence equivalent to being required to go through an entire trial dressed in jail garb." *Id*.

The present case is analogous to *Horton* and *Serges*, as opposed to previous matters involving defendants dressed in custodial attire for the entirety of the trial proceedings. Pertinently, if this Court has determined that a defendant's appearance in custodial attire in a preliminary-examination video at trial does not undermine the presumption of innocence or violate due process, then complainant's isolated comments referencing Peyerk's prior appearance in orange, which are milder by comparison, cannot either. *Serges*, ___ Mich App at ___; slip op

-11-

at 20; *Horton*, 341 Mich App at 402. Further, while references to a defendant's previous incarceration or criminal history are generally inadmissible, *People v Beesley*, 337 Mich App 50, 57-58; 972 NW2d 294 (2021), this case involves brief remarks regarding Peyerk's detention while awaiting trial. Such comments do not implicate the concerns associated with evidence of prior convictions, namely, that a jury might misuse that evidence by focusing on the defendant's general bad character. *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). Additionally, the trial court instructed complainant to refrain from commenting further on Peyerk's appearance or clothing, and it directed the jury to disregard complainant's contested statements in its consideration of Peyerk's guilt. See *Beesley*, 337 Mich App at 60 (providing, "The curative instruction effectively struck the challenged testimony because the trial court directed the jury to disregard any evidence that defendant had a criminal history").

In light of the foregoing, we opine that complainant's limited references to Peyerk's pretrial detention did not provide a meritorious basis for a mistrial. Accordingly, defense counsel was not ineffective for neglecting to move for a mistrial on this ground. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating, "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel"). This conclusion is further bolstered by the particularly high standard for granting a mistrial, in addition to the governing caselaw addressing unresponsive testimony as a basis for such relief, given that complainant's contested comments arose in response to the prosecution's question to identify Peyerk. See *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (noting, "the moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way") (quotation marks and citation omitted); see also *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (opining that generally, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial").

Even assuming, arguendo, that his trial counsel's performance was objectively unreasonable, Peyerk fails to establish that but for that deficient performance, there is a reasonable probability the outcome of the trial would have been different. *Abcumby-Blair*, 335 Mich App at 228. As previously stated, complainant's remarks were brief and isolated, the trial court admonished complainant to limit her testimony to the questions asked, and the court instructed the jury to ignore complainant's statements regarding Peyerk's appearance and not to consider them as evidence. *Zitka*, 335 Mich App at 348. Further, considering the extensive evidence presented against Peyerk from which a jury could find him guilty beyond a reasonable doubt of the charged offenses, Peyerk cannot demonstrate that the unsolicited comments, or his counsel's omission to move for a mistrial on the basis of those remarks, caused him prejudice. *Serges*, ___ Mich App at ___; slip op at 16. Consequently, Peyerk has not shown reversal is warranted.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi

-12-